FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 17, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRAVIS PENDELL,<br><br>    Plaintiff,<br><br>    v.<br><br>SPOKANE COUNTY, WASHINGTON; LARRY H. HASKELL, in both his official capacity as Spokane County Prosecutor and individually; and JOHN F. DRISCOLL, in both his official capacity as Deputy Prosecutor and individually;<br><br>    Defendants. | NO. 2:19-CV-00426-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

    The Court held a telephonic motion hearing on June 8, 2020 on Defendants' FRCP 12(c) Motion to Dismiss, ECF No. 27. Plaintiff was represented by Michael Love and Thomas Jarrard. Defendants were represented by Paul Kirkpatrick and Christopher Browning. During the hearing, the Court heard Defendants' arguments in support of their motion to dismiss and Plaintiff's arguments against the motion. The Court took the matter under advisement. Having considered the briefing, parties' oral arguments, and the relevant caselaw, the Court **grants** Defendants' motion.

//

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 1**

**Facts**

The following facts are taken from Plaintiff's First Amended Complaint (FAC). In 1996, Plaintiff was employed as a police officer with the Cheney Police Department. ECF No. 12 at ¶ 11. In January 1996, Plaintiff conducted a DUI stop of a suspect. *Id.* In preparing the police report on the DUI suspect's arrest, Plaintiff incorrectly listed himself as the transporting officer when another officer had actually transported the suspect. *Id.* In July 1996, at the trial of the DUI suspect, Plaintiff testified that he had not been the transporting officer. *Id.* As a result, Plaintiff was told by his superiors to either resign or face termination for falsifying a police report. *Id.* Plaintiff chose to resign. *Id.* Due to the incident, the Cheney Police Chief and Plaintiff's patrol sergeant encouraged Plaintiff to apply to other departments and promised to give him recommendations. *Id.*

In 1999, Plaintiff was hired by the Spokane County Sheriff's Office as a fully commissioned law enforcement officer. *Id.* at ¶ 12. Plaintiff alleges that the Sheriff's Office had full knowledge during the application, background, and hiring process of the circumstances leading to Plaintiff's resignation from the Cheney Police Department in 1996. *Id.*

The Spokane County Prosecutor's Office maintains a policy for creating a Potential Impeachment Disclosure List ("PIDL"), colloquially known as the "*Brady* list." *Id.* at ¶ 13. The County Disclosure Mandate Procedure requires an internal investigation by a law enforcement agency prior to placing an officer's name on the PIDL. *Id.*

On December 29, 2016, Defendant Driscoll notified Plaintiff that he was being placed on the PIDL due to "a sustained finding of Sheriff's Office Policy 340.5(ae)" for making false or misleading statements in connection with an investigation. *Id.* at ¶¶ 17-18. Plaintiff alleges that he was placed on the PIDL due solely to the 1996 Cheney incident and that no separate investigation concerning

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 2**

the incident occurred prior to his placement on the PIDL by Defendants. *Id.* at ¶¶ 15-17.

On January 6, 2017, Plaintiff responded to Defendant Driscoll's notice and protested the decision to add him to the PIDL because—besides the Cheney incident—he was aware of only one unfounded complaint against him. *Id.* at ¶ 19. Plaintiff alleges that if the 1996 Cheney incident were investigated, it would have been determined that Plaintiff never violated Office Policy 340.3.5(ae) while employed at the Sheriff's Office. *Id.* at ¶¶ 21-23. Plaintiff further alleges that two Sheriff's Office employees—Sheriff Knezovich and Detective Sergeant Hines—testified in unrelated litigation that placement on the PIDL significant impairs a law enforcement officer's opportunity for promotion and advancement. *Id.* at ¶¶ 24-26. Plaintiff alleges he did not learn of the harm to his career until December 2018, when he learned that Sheriff Knezovich testified that he would not hire or promote an officer who was placed on the PIDL. *Id.* at ¶ 27.

Plaintiff sought removal of his name from the PIDL, but Defendants refused, giving rise to the instant litigation. Plaintiff alleges that he will suffer irreparable harm because he will be denied promotion and advancement during his next opportunity for promotion and placement on the PIDL has caused harm to his professional reputation. Plaintiff also argues that Defendants' decision to place him on the PIDL violated his due process rights by depriving him of his liberty and property interests in his employment.

**Legal Standard**

A party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). A motion for a judgment on the pleadings "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). Rule 12(c) motions are functionally identical to a motion brought under

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 3**

1  Rule 12(b). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.
2  1989). Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a
3  claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).
4      Dismissal under Rule 12(c) and (b)(6) is only proper if there is either a "lack
5  of a cognizable legal theory" or "the absence of sufficient facts alleged under a
6  cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015);
7  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When
8  considering a 12(b)(6) motion, the court accepts the allegations in the complaint as
9  true and construes the pleading in the light most favorable to the non-moving
10 party. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However,
11 this does not require the Court "to accept as true legal conclusions couched as
12 factual allegations." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir.
13 2020).
14     To survive a motion to dismiss, the complaint must state a claim for relief
15 that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is
16 plausible on its face when "the plaintiff pleads factual content that allows the court
17 to draw the reasonable inference that the defendant is liable for the misconduct
18 alleged." *Id.* The allegations must be enough to raise the fight to relief above a
19 speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Discussion**

21     The general thrust of Plaintiff's complaint is that he should not have been
22 placed on the PIDL for the 1996 Cheney incident—which he fully admits
23 occurred—because it happened prior to his employment with the Sheriff's Office,
24 that a separate and independent investigation should have been conducted prior to
25 his placement on the PIDL, and that he was entitled to notice and an opportunity to
26 respond prior to being placed on the PIDL. Plaintiff also asserts that Defendants
27 failed to follow County policy in placing him on the PIDL. Defendants assert that
28 Plaintiff's complaint should be dismissed because SCP Haskell and DPA Driscoll

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 4**

are entitled to absolute prosecutorial immunity and Eleventh Amendment immunity. Defendants argue that because Defendants Haskell and Driscoll are state actors, Spokane County cannot be held liable for the decision to place Plaintiff on the PIDL. Having reviewed the briefing, the parties' oral arguments, and relevant case law, the Court grants Defendants' motion.

1. Claims Against Defendants Driscoll and Haskell

   a. *Absolute Prosecutorial Immunity*

Defendants argue that Defendants Driscoll and Haskell are absolutely immune from suit because their decision to place Plaintiff on the PIDL was a prosecutorial decision. Plaintiff argues that the placement of an officer is an investigatory or administrative function entitled only to qualified immunity.

It has long been settled that a prosecutor is absolutely immune for actions taken in her prosecutorial capacity and is only qualifiedly immune for actions taken in her investigatory or administrative capacity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Whether a prosecutor was acting in her prosecutorial capacity or some other capacity is determined by "the nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *see also Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

The official invoking absolute immunity bears the burden of showing that she is entitled to immunity for the function in question. *Burns v. Reed*, 500 U.S. 478, 486 (1993). The duties of a prosecutor in her role as an advocate for the State—including actions preliminary to the initiation of a case—are entitled to absolute immunity. *Buckley*, 509 U.S. at 272. This includes the professional evaluation of evidence but does not extend to functions normally performed by a detective or a police officer. *Id.* at 273. A prosecutor's professional evaluation of a witness is entitled to absolute immunity, "even if that judgment is harsh, unfair, or clouded by personal animus." *Roe v. City & Cty. of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997). When arguably administrative tasks are directly connected

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 5**

with the conduct of a trial and necessarily require legal knowledge and the exercise of related discretion, absolute immunity is appropriate. *Van de Kamp v. Goldstein*, 555 U.S. 335, 344-49 (2009). If an official's conduct is determined to be in her prosecutorial capacity, she is entitled to absolute immunity even if it would leave a "genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427.

      Several courts have considered the specific question before the Court and have held that the decision to place an officer on a PIDL is a prosecutorial function entitled to absolute immunity. *See, e.g.*, *Neri v. Cnty of Stanislaus District Attorney's Office*, No. 1:10-CV-823-AWI-GSA, 2010 WL 3582575 at *5-6, 8 (E.D. Cal. Sept. 9, 2010). Courts have specifically held that the legal determination of what constitutes potential *Brady* and *Giglio* material that must be disclosed in a state criminal trial and whether to use an officer as a witness in the future is a prosecutorial function entitled to absolute immunity. *Harris v. Chelan Cty. Sheriff's Dep't*, No. 2:17-CV-0137-JTR, 2019 WL 1923924 at *4 (E.D. Wash. April 30, 2019); *Nazir v. Cty. of Los Angeles*, CV10-06546-SVW (AGRx), 2011 WL 819081 at *8 (C.D. Cal. Mar. 2, 2011).

      Defendants Driscoll and Haskell are entitled to absolute prosecutorial immunity for the decision to place Deputy Pendell on the PIDL. As other courts have recognized, the decision to place Plaintiff on the PIDL involves the exercise of legal knowledge and discretion and is necessary for prosecutors to comply with their constitutional duties under *Brady v. Maryland*. *Harris*, 2019 WL 1923924 at *4; *Nazir*, 2011 WL 819081 at *8; *Neri*, 2010 WL 3582575 at *5-6, 8. Defendants' decision to place Plaintiff on the PIDL was therefore within their prosecutorial capacities and they are entitled to absolute immunity.

      Plaintiff's arguments that Defendants are not entitled to absolute immunity fail for several reasons. First, Plaintiff points to Wash. Rev. Code 36.27.010 as evidence that placing an officer on a PIDL is not within a prosecutor's duties as a

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 6**

matter of state law. Although this is not a specific enumerated duty under state law, this function plainly falls within duties that are enumerated, such as prosecuting criminal actions. Wash. Rev. Code 36.27.020(4). Indeed, under Washington law prosecutors have an affirmative constitutional duty to disclose potential impeachment evidence and ensure that an accused is afforded a fair trial. *See State v. Haga*, 8 Wash. App. 481, 493 (1973). Thus, the decision of whether any given evidence should be disclosed is within a prosecutor's role as an advocate for the State. Second, Plaintiff argues that Defendants are not entitled to absolute immunity because they did not follow County policy for placing Plaintiff on the PIDL. He attempts to distinguish from the cases cited above on these grounds. However, this argument fails because absolute immunity applies in every instance where a prosecutor was acting in a prosecutorial capacity, even if a genuinely wronged defendant is left without civil redress. *Imbler*, 424 U.S. at 427. Even if Driscoll and Haskell did not follow County policy, and even if that decision deprived Plaintiff of his due process rights, they are entitled to absolute immunity because the decision to place Plaintiff on the PIDL is a prosecutorial function. *Imbler*, 424 U.S. at 427.

Defendants Driscoll and Haskell are entitled to absolute prosecutorial immunity and, accordingly, the Court grants Defendants' motion.

  b. *Eleventh Amendment Immunity*

Defendants Driscoll and Haskell also argue they are entitled to immunity under the Eleventh Amendment because they were acting as state officials when they placed Deputy Pendell on the PIDL. In response, Plaintiff argues that Defendants were acting as county officials because they were not acting within their prosecutorial functions and because they acted unlawfully when they placed Plaintiff on the PIDL.

The Eleventh Amendment bars actions for damages against state officials sued in their official capacities unless the State has waived its immunity or

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 7**

Congress has abrogated its immunity under Section 5 of the Fourteenth Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 71 (1989). Whether a state or state official is immune from suit under the Eleventh Amendment is a question of law. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999). For suits against state officials in their personal capacities, the plaintiff need only show that the official acted under color of state law and deprived the plaintiff of a federal right; the plaintiff need not allege anything more to avoid the Eleventh Amendment. *Id.* at 1185-86.

Where an official is both a state official and a county official, state law governs whether an officer is a state official or a county official in a given situation. *Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir. 2004), *rev'd and remanded on other grounds*, 547 U.S. 410 (2006); *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1028 (9th Cir. 2000). Courts have repeatedly found that district attorneys are state officers when exercising their prosecutorial functions and are therefore entitled to Eleventh Amendment immunity for suits for damages in their official capacities. *Weiner*, 210 F.3d at 1030; *Harris*, 2019 WL 1923924 at *4. In addition, the factors considered in determining whether a prosecutor is entitled to absolute immunity are the same factors considered in determining whether Eleventh Amendment immunity applies. *Neri*, 2010 WL 2582575 at *5. Thus, absolute prosecutorial immunity cases may guide Eleventh Amendment immunity cases, and vice versa. *Id.*

Defendants Haskell and Driscoll are entitled to Eleventh Amendment immunity. They were acting in their prosecutorial capacity when they placed Plaintiff on the PIDL, and therefore were acting as state officials, not county officials. *See Harris*, 2019 WL 1923924 at *5. Furthermore, Washington law recognizes that a prosecutor is a state actor when prosecuting criminal actions and taking steps towards prosecuting a criminal action. Wash Rev. Code 36.27.020(4); *cf. Haga*, 8 Wash. App. at 493 (1973) (noting that the prosecutor, as a quasi-

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 8**

judicial state officer, has an affirmative duty to disclose *Brady* evidence and assure that an accused is afforded a fair trial). Accordingly, claims for damages against Defendants Haskell and Driscoll in their official capacities are barred by the Eleventh Amendment.

Insofar as Plaintiff seeks injunctive relief requiring Defendants to remove him from the PIDL, the Court does not have authority to grant such relief. Plaintiff is correct that the Eleventh Amendment does not bar suits against state actors for prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). Injunctions limiting government functions are generally only permitted in extraordinary circumstances. *Rizzo v. Goode*, 423 U.S. 362, 379 (1976); *M.S. v. Brown*, 902 F.3d 1076, 1089-90 (9th Cir. 2018). Where a plaintiff requests that a federal court enjoin a state criminal proceeding, injunctive relief is warranted only if there is a "pervasive pattern…flowing from a deliberate plan by the named defendants" to unconstitutionally harm the plaintiff. *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992).

Defendants Driscoll and Haskell placed Plaintiff on the PIDL in an apparent effort to comply with their constitutional duties under *Brady v. Maryland* and *Giglio v. United States*. Absent evidence of a deliberate plan to act unconstitutionally—and even if they failed to follow Spokane County policies for placing an officer on the PIDL—there are no grounds to grant Plaintiff the extreme relief he seeks here. *See Lackey v. Lewis Cty.*, No. C09-5145RJB, 2009 WL 3294848 at *14 (W.D. Wash. Oct. 9, 2009). Accordingly, Plaintiff is not entitled to injunctive relief requiring Defendants to remove him from the PIDL.

   c. *Plaintiff's Due Process Claims*

Plaintiff's FAC alleges that Defendants deprived him of his property and liberty interests in his employment and professional reputation by placing him on the PIDL without proper process. Specifically, Plaintiff asserts that he has a property interest in continued, unimpaired employment, including promotions that

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 9**

he would be eligible for in the future that he alleges are not available to him by virtue of being placed on the PIDL. Defendants argue that Plaintiff's FAC should be dismissed because he fails to state a due process claim against Defendants Driscoll and Haskell. Defendants argue they are entitled to judgment as a matter of law because neither of them deprived Plaintiff of his due process rights because he has not faced any adverse employment consequences as a result of his placement on the PIDL.

Procedural due process makes it unconstitutional for the government to deprive a person of a constitutionally protected interest without first giving due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). To determine whether a plaintiff was entitled to due process, the Court must determine whether a liberty or property interest exists in the first place and whether Defendants interfered with that interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). If the court determines that Defendants did interfere with a constitutionally protected interest, only then does it consider whether the procedures accompanying that interference were constitutionally sufficient.

### i. Property Interest Claim

Deprivation of a contract benefit—such as employment—does not automatically give rise to a property interest protected by the Due Process Clause. *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 905 (9th Cir. 1993). Government employees can have a protected interest in their continued employment if they have a legitimate claim to tenure or if the terms of employment make it clear that the employee can be fired only for cause. *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 922 (9th Cir. 2013). In general, there is a strong presumption that a public employee be given some form of notice and opportunity to be heard before being deprived of a property or liberty interest. *Vanelli v. Reynolds Sch. Dist.*, 667 F.2d 773, 778 (9th Cir. 1982). However, the employee's expectation must be rooted in some source of state law giving her a

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 10**

claim to continued employment, not merely a unilateral expectation that it would continue. *Blantz*, 727 F.3d at 924. Thus, the prospect of a promotion does not give rise to such an entitlement, and the fact that a person was not promoted is not grounds for a due process property claim. *Nunez v. City of Los Angeles*, 147 F.3d 867, 871-72 (9th Cir. 1998).

Insofar as Plaintiff alleges a property interest in continued "unimpaired" employment with the Spokane County Sheriff's Office. ECF No. 12 at 7-8, 12, his claim fails as a matter of law Although Plaintiff is correct that he has a property interest in continued employment under Washington law, *see* Wash. Rev. Code 41.14.120, he is incorrect that this provision gives him an entitlement to future promotions. By its terms, the protections of Wash. Rev. Code 41.14.120 are triggered by removal, suspension, demotions, or discharge. *See also Payne v. Mount*, 41 Wash. App. 627, 633 (1985). Placement on the PIDL does not amount to removal, suspension, or demotion. Plaintiff continues to be employed by the Spokane County Sheriff's Department and has not been terminated or demoted since his placement on the PIDL. Furthermore, the Court is unaware of—and Plaintiff fails to cite to any cases in support of his position—any law that would give a person a right to "unimpaired" employment. The fact that Plaintiff may be passed over for promotions in the future is not sufficient to create a property interest that would trigger due process protections. Because Plaintiff does not have an entitlement to future promotions and he has not been suspended, demoted, or otherwise removed from his position with the Sheriff's Office, he has not suffered a deprivation of a constitutionally protected property interest and is not entitled to notice and an opportunity to respond.

    ii. Liberty Interest Claim

Plaintiff also claims a liberty interest in his occupation. The Due Process clause does recognize such an interest if a public employer terminates an employee and, in doing so, makes a charge that might seriously damage the employee's

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 11**

standing or impose a stigma on him that prevents him from taking advantage of other employment in his chosen profession. *Blantz*, 727 F.3d at 925 (quoting *Tibbets v. Kulongoski*, 567 F.3d 529 (9th Cir. 2009)). However, the protections of due process are not triggered if the employer's stigmatizing statements merely reduce the employee's economic returns or diminish his prestige within the profession; rather, the employee must be permanently excluded from his chosen profession. *Id.* Charges that carry the stigma of moral turpitude may implicate a liberty interest, but charges of general incompetence or an inability to get along with others do not. *Portman*, 995 F.2d at 907. The mere fact that the charges may be unfair or untrue does not automatically give rise to a constitutional claim, though they may give rise to a state law defamation claim. However, in general, the right or status at issue must be "distinctly altered or extinguished" in order to trigger the protections of the Due Process Clause. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976).

In order to show that a liberty interest has been deprived, the plaintiff must satisfy the "stigma-plus" test. *Vanelli*, 667 F.2d at 778. This can be accomplished in two ways. *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006). First, the plaintiff could show that the injury to his reputation occurred in connection with the deprivation of some other federally protected right. *Id.* Second, the plaintiff could show that the injury to his reputation caused the denial of the federal protected right. *Id.* Whichever route the plaintiff takes, however, he must show that "the accuracy of the charge is contested", that there is "some public disclosure of the charge", and the charge "is made in connection with the termination of employment or the alteration of some right or status recognized by state law." *Vanelli*, 667 F.2d at 777-78.

Plaintiff argues that Defendants violated his liberty interest in his employment and professional reputation when they placed him on the PIDL. ECF No. 12 at 12. In particular, he argues that he is entitled to a hearing due to the

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 12**

"stigmatizing effect of being placed on the PIDL," which he argues prevents him from seeking advancement and similar employment in other police departments. *Id.* However, Plaintiff has not demonstrated that he would, in fact, be deprived of *all* employment in his field by virtue of his placement on the PIDL. Indeed, if Plaintiff has shown any damage to his reputation, it has only deprived him of prestige and future possibilities of promotions and advancement. This is insufficient to make out a liberty interest claim, and therefore Plaintiff is not entitled to the process he desires.

Furthermore, Plaintiff has failed to satisfy the "stigma-plus" test. As a preliminary matter, Plaintiff fails because he does not contest the validity of the charge against him—that he falsified a police report while employed with the Cheney Police Department—and the charge was not made in connection with termination from employment. *Vanelli*, 667 F.2d at 777-78. To the contrary, Plaintiff fully admits in his First Amended Complaint and throughout his briefing that he did in fact falsify a police report while with the Cheney Police Department by incorrectly listing himself as a transporting officer when he was not. Insofar as Plaintiff argues placement on the PIDL damaged his reputation, his claim sounds in defamation law, not in federal constitutional law.

Plaintiff urges the Court to adopt a conception of due process that would create a due process violation for adverse employment decisions short of termination, arguing that *Paul v. Davis,* 424 U.S. 693 (1976), should not be narrowly read to apply strictly to termination cases. The Court is not persuaded the Supreme Court intended to expand its due process jurisprudence to cover all adverse employment decisions in the context of liberty interest claims, given language in subsequent caselaw from the Ninth Circuit that is specific to employment termination. Indeed, in *Vanelli*, *Tibbets*, and other opinions, the Ninth Circuit's analysis and language was specific to the context of termination, and even in *Davis*, the Court noted that injury to reputation alone, apart from some other

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** * 13

injury to another interest, is insufficient to make out a due process violation. Indeed, insofar as courts have recognized a possible due process right for employment decisions short of termination, courts still require that the alteration be "of some right or status *recognized by state law*." *Vanelli*, 667 F.2d at 778 (emphasis added). As discussed above, Plaintiff has not been deprived of some right recognized by state law and, even if a claim did arise short of termination, Plaintiff's argument fails because he has not been deprived of a right or status recognized by state law.

In addition, the fact that a liberty interest deprivation occurs only when an employee is unable to take advantage of other employment opportunities cuts against Plaintiff's preferred reading. If an employee has not been fired, it follows then that he is still free to take advantage of employment opportunities in his chosen field, i.e. his current employment. Speculation that Plaintiff *might* not be able to find a new job, absent more concrete evidence, is insufficient to meet this standard. Accordingly, Plaintiff has not suffered an unconstitutional deprivation of his liberty interest in his professional reputation or employment.

2. Claims Against Spokane County

Defendants next argue that Plaintiff's claims against Spokane County fail because Defendants Driscoll and Haskell were state actors—and therefore any wrongdoing on their part cannot be attributed to the county—and because Plaintiff has failed to show that the County itself violated Plaintiff's rights.

By its terms, counties are not entitled to sovereign immunity under the Eleventh Amendment. If an official is entitled to Eleventh Amendment immunity, the County cannot be held liable for the official's acts. *Ceballos*, 361 F.3d at 1182. Because Defendants Haskell and Driscoll are entitled to Eleventh Amendment immunity, the County cannot be held liable for their acts and Plaintiff fails to state a claim against it.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 14**

Plaintiff also fails to state a claim against Defendant Spokane County in its own right. A municipality like a county is a person for purposes of § 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). In order to state a claim against a municipality, the plaintiff must show that the municipality's own unconstitutional or illegal policies caused him harm. *Id.* A municipality may not be held liable under a theory of *respondeat superior*; instead, a municipality may be held liable for the actions of an employee or agent only if they were executing the municipal policy or custom. *Id.* at 694.

A plaintiff can prove an unconstitutional policy or custom through the existence of actions by the municipal legislative body, the actions by municipal agencies or boards that exercise authority delegated to them by the municipal legislative body, the actions by those with final decision-making authority for the municipality, or by demonstrating a government policy of inadequate training or supervision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-84 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Individuals with final decision-making authority must derive their authority from the municipal legislature or be delegated that authority from higher officials; it is not enough that the employee has discretion in the discharge of her duties. *Pembaur*, 475 U.S. at 483. Whether an unconstitutional policy or custom exists is a determination of state and local law for the judge to decide. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). An individual who is a state official for purposes of Eleventh Amendment immunity—rather than a local official—generally is not a final decision-maker for the local government. *See, e.g., McMillan v. Monroe Cty.*, 520 U.S. 781, 788 (1997) (finding that a sheriff acting in his law enforcement capacity on behalf of the State is not a final decision-maker for the county).

Plaintiff's First Amended Complaint does not make any direct claims against Spokane County or any claims that the County maintained an unconstitutional policy or custom. It appears that Plaintiff's theory of liability

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 15**

hinges on attributing Defendant Haskell and Driscoll's alleged wrongdoing to the County. Insofar as Plaintiff argues *Pembaur* applies because Defendants Haskell and Driscoll had final decision-making authority in choosing who was placed on the PIDL, ECF No. 30 at 17-18, this argument fails because Plaintiff does not actually show that they had such authority. What Plaintiff does show is that Defendants had some discretion in placing officers on the PIDL and they allegedly failed to follow County policy, but this is insufficient to show municipal liability. That Plaintiff alleges that Defendants Haskell and Driscoll had discretion in implementing County policy, but not in setting policy themselves, is also fatal to his argument that the County is liable under *Pembaur*. Accordingly, Plaintiff fails to state a claim against Spokane County and Defendant's motion to dismiss it is granted.

### 3. State Law Claims and Statute of Limitations

Finally, Defendants argue that Plaintiff's state law defamation and false light claims are outside the applicable statute of limitations and must be dismissed. In response, Plaintiff argues that the discovery rule applies to these claims and that his state law claims are not time barred. Specifically, Plaintiff argues that he did not learn of the harm to his reputation caused by his placement on the PIDL until November 27, 2018.

Under Washington law, defamation and false light claims have a two-year statute of limitations. Wash. Rev. Code 4.16.100; *Eastwood v. Cascade Broad. Co.*, 106 Wash.2d 466, 474 (1986) (finding that "because of the duplication inherent in false light and defamation claims…a false light invasion of privacy claim is governed by the two-year statute of limitations for libel and slander."). The statute of limitations accrues at the time of the tortious act or omission. *Milligan v. Thompson*, 90 Wash. App. 586, 592 (1998). However, the statute of limitations may be tolled if the discovery rule applies. *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wash.2d 566, 575-76 (2006). The discovery rule provides that

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** * 16

a cause of action accrues when the plaintiff discovers—or in the reasonable exercise of diligence should discover—all the elements of the cause of action. *Id.*

Plaintiff argues that placement on the PIDL constitutes defamation because it suggests that he violated Spokane County policy while employed as a Spokane County deputy Sheriff. Plaintiff argues that he was not aware of the harm to his reputation until December 2018, when Sheriff Knezovich testified in separate litigation that he would not hire or promote someone on the PIDL. However, this argument does not comport with Plaintiff's actual response to being notified of his placement on the PIDL. The First Amended Complaint shows that Plaintiff was notified by Defendant Driscoll on December 29, 2016, that he was going to be placed on the PIDL. Plaintiff responded to that letter on January 6, 2017, stating that his personnel file contained a true and complete disclosure of any information that would have prevented him from receiving his employment and commission and that he objected to the decision placing him on the list. ECF No. 12 at 6. Based on this response, Plaintiff knew or should have known that his reputation may have been damaged by placement on the PIDL. The fact that Plaintiff objected to being placed on the list, in particular, suggests that he did in fact appreciate the potential damage to his reputation.

Even if the statute of limitations was tolled while he submitted a Notice of Tort Claim, at the very latest the statute of limitations on all three of Plaintiff's state law claims accrued on March 4, 2019. Plaintiff did not file this action until December 20, 2019. Absent other arguments for why the statute of limitations could have been tolled, Plaintiff's defamation, defamation per se, and false light claims are untimely and are dismissed.

//
//
//
//

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 17**

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' FRCP 12(c) Motion to Dismiss, ECF No. 27, is **GRANTED**. All claims against Defendants are **dismissed**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, to provide copies to counsel, enter judgment in Defendants' favor and against Plaintiff, and **close** the file.

**DATED** this 17th day of June 2020.



                         Stanley A. Bastian
                      United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 18**